# Supreme Court of the Navajo Nation

**Slim J. Biakeddy, Appellant,**
v.
**Jane D. Biakeddy, Appellee.**
**Decided May 7, 1991**

## OPINION

Before TSO, Chief Justice, BLUEHOUSE and AUSTIN, Associate Justices.

Loretta E. Nez, Esq., DNA-People's Legal Services, Inc., Tuba City, Navajo Nation (Arizona), for the Appellant; and Robert B. Walters, Esq., Tuba City, Navajo Nation (Arizona), for the Appellee.

Opinion delivered by AUSTIN, Associate Justice.

Slim J. Biakeddy (appellant) appealed a final judgment of the Tuba City Family Court granting Jane D. Biakeddy (appellee) a divorce from appellant and awarding her alimony of $150.00 per month. The appellant claims that the lower court's order for alimony violates applicable federal regulations and asks us to vacate the family court's decree and to remand this case for the issuance of a properly worded order of alimony. Finding nothing to support appellant's claim, we sustain the family court's judgment.

## I

The material facts of this case are not disputed. The parties were married for thirty-nine years. For twenty of those years, appellant worked for the railroad, retiring in 1981. After living apart from appellant for at least a year, appellee in 1990 brought suit for divorce. The Tuba City Family Court tried the matter on August 6, 1990 and issued its final opinion and judgment on September 24, 1990. After finding the couple unable to live together in harmony, the court granted appellee's petition for a divorce. The court divided the couple's community property by awarding appellant a small hogan and sheep corral, and ordering that appellee retain all other property, including a house, shed, furniture, and an assortment of animals.

On appellee's request for $800.00 per month in alimony, the court made the following findings: 1) that appellee receives $108.00 per month from Navajo Tribal General Assistance; 2) that appellant receives $739.51 per month in Railroad Retirement benefits; 3) that appellee has been a homemaker and caretaker of her flocks for all of her adult life; 4) that appellee is now "of an age" that she cannot be expected to seek either employment or vocational training in a new

field; and 5) that appellee depended upon appellant's retirement benefits to provide for the both of them in their remaining years. The court balanced the equities involved and rejected appellant's offer of $100.00 per month in alimony, ordering instead that appellant pay $150.00 per month in alimony. The court added the stipulation that the alimony be paid out of appellant's Tier II Railroad Retirement benefits, which amount to $197.00 of appellant's total Railroad Retirement benefits.

The appellant's timely appeal was taken from this order of alimony. The appellant questions neither the family court's authority to order that he pay alimony to appellee, nor the size of the alimony award. Instead, he makes only one argument: That the family court's order for alimony is invalid because it does not meet the criteria of the Code of Federal Regulations, 20 C.F.R. §§ 295, 350 (1990). Specifically, appellant claims that the alimony order is invalid because it does not require payment of the alimony directly to appellee from the Railroad Retirement Board (Board).

## II

The appellant, to prevail on appeal, must demonstrate that the family court made a clear error of law or abused its discretion in making findings of fact from the evidence. Here, the appellant does not contest any of the findings of fact or the amount of alimony awarded to his former spouse. Rather, he argues that the family court erred in its application of federal law to the facts of the case.

To find for appellant, we must be convinced not only that there was a misapplication of applicable law, but that such misapplication prejudiced appellant. Absent a showing of prejudice emanating from an error of law, such error is harmless and the family court's judgment will not be reversed. *See* Rule 61, Navajo Rules of Civil Procedure.

## III

The courts of the Navajo Nation must conform their decisions to applicable federal law. 7 N.T.C. § 204(a). In his appeal, however, appellant seeks to persuade us to declare that Navajo courts are obligated to conform their decisions to inapplicable federal law. This, of course, we cannot and will not do.

The appellant hinges his entire argument on two sections of the federal regulations governing the Board's actions. Neither of these sections is applicable to the question of whether a Navajo family court properly can order alimony which will of necessity come out of Railroad Retirement benefits.

First, 20 C.F.R. § 295 is inapplicable in its entirety. As subsection (a) very precisely sets forth that section's scope, its terms apply only to divorce, annulment or legal separation decrees in which the rendering courts have "characterize[d] [the] specified benefits as property subject to distribution. *Garnishment of benefits for alimony or child support is dealt with in Part 350 of this chapter.*"

(emphasis added). If the family court had included appellant's Railroad Retirement benefits in the community property to be divided, then we would be obligated to carefully consider the terms of 20 C.F.R. § 295 to determine their applicability to the facts at hand. Here, where the family court was explicit in its judgment, and the monies from the benefits were awarded as alimony, not as divided community property, we find that 20 C.F.R. § 295 is inapplicable.

Second, 20 C.F.R. § 350 likewise does not apply to the family court's judgment. The section in question reads as follows:

> Annuities and accrued annuities payable under the Railroad Retirement Act, sickness and unemployment benefits payable under the Railroad Unemployment Act, and benefits payable under any other Act administered by the Board, are subject, in like manner and to the same extent as if the Board were a private person, to legal process brought for the enforcement of legal obligations to provide child support or to make alimony payments.

20 C.F.R. § 350.1(a). "Legal process" is defined as follows:

> [A]ny writ, order, summons, or other similar process in the nature of garnishment ... issued by [a court] ... and ... directed to, and the purpose of which is to compel, a governmental entity, which holds moneys which are otherwise payable to an individual, to make a payment from such moneys to another party in order to satisfy a legal obligation of such individual....

42 U.S.C. § 662(e).

A thoughtful reading of the section reveals it for what it is: A limited waiver of sovereign immunity granted for the express and narrow purpose of allowing courts to legally access Railroad Retirement benefits when the intended recipient has failed to fulfill a legal obligation of alimony or child support. *See Rose v. Rose*, 481 U.S. 619, 634 (1987). This section can have no application to the parties to this case unless, or until, appellant refuses or neglects to make his alimony payments. Then, and only then, would the terms of 20 C.F.R. § 350 apply and appellee could petition the family court to serve process on the Board, arranging for the alimony payments to be made directly to appellee.

In *Rose*, the United States Supreme Court addressed almost the same question that appellant here raises. The appellant there claimed that he could not be held in contempt for failing to pay child support, because the only money available to pay the support came from his veteran's disability benefits.

The appellant in part based his appeal on the terms of the Child Support Enforcement Act (CSEA), 42 U.S.C. § 659(a). That Act first provides, in words almost identical to those in 20 C.F.R. § 350.1(a), that monies which members of this Country's armed forces earn for their employment is fully subject to garnishment or other legal process when those soldiers neglect their legal obligations for child support. It then goes on to exclude disability payments from the definition of earnings from employment, thus shielding those payments from garnishment through the Veteran's Administration. Bootstrapping, the appellant

there argued that this latter exclusion made it clear that Congress' intent was to render disability income immune from *any* legal process, including that of the state court which ordered the support.

The Court in *Rose* rejected the appellant's argument. It limited the words of the statute to their plain meaning as a limited waiver of sovereign immunity:

> Waivers of sovereign immunity are strictly construed, and we find no indication in the statute that a state court order of contempt issued against *an individual* is precluded where the individual's income happens to be composed of veteran's disability benefits. In this context, the Veterans' Administration is not made a party to the action, and the state court issues no order directing the Administrator to pay benefits to anyone other than the veteran. Thus, while it may be true that these funds are exempt from garnishment or attachment while in the hands of the Administrator, we are not persuaded that once these funds are delivered to the veteran a state court cannot require that veteran to use them to satisfy an order of child support.

*Rose*, 481 U.S. at 635.

While here, the cited regulations specifically provide for the garnishment of Railroad Retirement benefits through the Board where alimony or child support obligations have been ignored, the material facts — and the controlling language — echo the facts and language in *Rose*. The family court did not, with its alimony order, make the Board a party to the payment of Railroad Retirement benefits to appellee. While the Board may yet be made a party, if and when appellant neglects to fulfill his legal obligation to pay alimony, it is thus far not implicated in the issue. We find, then, that 20 C.F.R. § 350 has no application to the family court's decision or its wording.

## IV

The family court specified that the alimony paid by appellant is to come out of his Tier II Railroad Retirement benefits. These words are superfluous and, legally, without force. We read the family court's order to merely take note of the availability of funds for the alimony payment from appellant's Railroad Retirement benefits. Because the appellant apparently has no other income than his Railroad Retirement benefits, it was a logical conclusion by the court that the alimony would come from those benefits. However, we are certain that the family court has no wish to pry any further into the affairs of appellant than is necessary to make certain that appellee gets the ordered $150.00 per month from appellant. As long as the alimony payments are made in a timely fashion, the source of those payments remains within appellant's discretion.

The family court's judgment and order are AFFIRMED.